CONLEY et al. v. ABRAMS et al. (No. 9044.)

Court of Civil Appeals of Texas. Galveston. March 16, 1928.

Rehearing Denied June 22, 1928.

1. Appeal and error �köö766—Violation of court rules in preparation of brief held to warrant court in refusing to consider points and propositions set out (Supreme Court Rules 29, 31).

Appellant's violation of Supreme Court Rules 29, 31, in preparation of brief, *held* to warrant court in refusing to consider points or propositions set forth, except if they disclose fundamental error.

2. Courts �köö91(1)—Prior to statute, Supreme Court's refusal of writ of error was not approval of holdings of Court of Civil Appeals on all questions presented (Acts 40th Leg. [1927] c. 144).

Under law prevailing prior to Acts 40th Leg. (1927) c. 144, refusal of writ of error by Supreme Court was not in itself an approval of the holdings of the Court of Civil Appeals on all questions presented by appeal.

3. Judgment ⊦köö747(½)—Doctrine of judicial estoppel, based on decision in prior case between substantially same parties, held inapplicable in action involving title to land (Acts 40th Leg. [1927] c. 144).

Where prior case between substantially same parties involving title to land was decided in defendants' favor, both on issues of substantive law and under statute of limitations, and writ of error refused by Supreme Court (prior to Acts 40th Leg. [1927] c. 144), *held* doctrine of judicial estoppel did not apply so as to preclude plaintiffs in such case from raising same issues as to title in subsequent case.

On Motion for Rehearing.

4. Execution ⊦köö275(3)—Execution sale of homestead and additional land would not be invalid as to land in excess of homestead.

Execution sale of land, including homestead and additional land, would be valid at least as to such additional land.

Appeal from District Court, Brazoria County; W. S. Sproles, Special Judge.

Trespass to try title by Ben L. Conley against W. H. Abrams and others. Judgment for defendants, and plaintiffs appeal. Affirmed.

Rucks & Enlow, A. E. Masterson, and J. T. Loggins, all of Angleton, and Oliver J. Todd, of Beaumont, for.appellants.

McCormick, Bromberg, Leftwich & Carrington and M. W. Townsend, all of Dallas, W. H. Wilson, of Houston, Louis J. Wilson, of Angleton, and C. R. Wharton and Robert A. John, both of Houston, for appellees.

PLEASANTS, C. J. This is an action of trespass to try title brought by plaintiffs in error, who are the heirs of George C. Tennille, against the Texas Company, the heirs of W. H. Abrams, the heirs of Paul McCombs, and a number of other defendants.

The defendants answered by general demurrer, general denial, plea of not guilty, and pleas of limitation.

The suit was dismissed as to a number of the original defendants, and, at the conclusion of the evidence, the trial court, upon the request of the remaining defendants, the Texas Company, the heirs of W. H. Abrams, the heirs of Paul McCombs, the Gulf Production Company, the Crown Oil & Refining Company, and W. B. Munson, instructed the jury to return a verdict in their favor.

The land in controversy is a part of the headright granted to George Tennille, a colonist in Austin's Colony.

The plaintiffs are heirs of George C. Tennille, who, by inheritance and by conveyance from the administrator of George Tennille, the original grantee, became the owner of all lands belonging to the original grantee at the time of his death.

The defendants introduced two chains of title, one emanating from Ammon Underwood, who purchased the land in controversy at execution sales against the original grantee, George Tennille, the other coming through a deed from Tom Tennille, a son of George C. Tennille.

If the sales under execution and the conveyance of the land by the sheriff of Brazoria county to Ammon Underwood are not shown to have been void, or if the will of George C. Tennille was duly probated, defendants have record title to all of the land in controversy, and the trial court properly instructed a verdict in their favor.

[1] Appellants' brief is not prepared as required by the rules for briefing promulgated by our Supreme Court, and might be wholly disregarded by this court. A proper preliminary statement showing the nature and result of the suit is made in the first 2 pages of the brief. This is followed by a copy of the exceptions presented in the court below to the court's charge. These exceptions, 39 in number, occupy the next 10 pages of the printed brief. The next 15 pages contain copies of 12 bills of exceptions taken to the rulings of the court. Then follows 15 pages purporting to state the substance of the material evidence contained in the more than 1,200 pages of the statement of facts sent up with the record. Most of this "statement of the evidence" consists of copies of written instruments, and of arguments and discussions of controverted issues. The succeeding 7 pages contain the 38 "points" or "propositions" upon which the appeal is alleged to be based. Beginning on the fifty-ninth page, and extending to page 84, under the head of "Remarks," there is a discussion of numerous grounds on which it is claimed that the execution sales of the land under which Underwood purchased were void, and that the will of George C. Tennille was not legally probated, and a number of authorities are cited and discussed.

The "remarks" are not addressed to any definite and distinct proposition. In the general discussion, a number of the 38 "points" or "propositions" theretofore copied in the brief are referred to, but no clear statement of the record bearing upon the respective propositions is presented directly nor by inference to the general statement of the evidence contained in the brief, and the argument and authorities cited are not addressed to any designated definite proposition. Following these "remarks," the brief contains a copy of 110 assignments of error which cover the remaining 26 pages of the brief.

From this summary of the arrangement and contents of the brief, it is manifest that rules 29 and 31 have not been observed, and we are not required to consider any one of the 38 "points" or "propositions" thus hurled at us, unless some one or more of them presents fundamental error apparent on the face of the record. First Nat. Bank v. Smith (Tex. Civ. App.) 246 S. W. 1056; Green v. Shamburger (Tex. Civ. App.) 243 S. W. 601; Nacklinger & Rayburn v. Prewitt (Tex. Civ. App.) 294 S. W. 977.

The record presents no fundamental error, and the case might properly be affirmed without discussing or considering any of the propositions sought to be presented. We will not, however, so dispose of the appeal.

In the closing portions of the "remarks" contained in the brief, a summary of the grounds upon which the execution sale is claimed void is thus stated:

"It therefore appears that the sheriff sale was void:

"(a) Because the judgment upon which the sale was made was for $204.90, and the alcalde had no jurisdiction above $100. ·

"(b) Because, under the uncontroverted evidence, the presumed judgment was rendered without jurisdiction over the defendant, and was void for want of parties.

"(c) Because the judgment was rendered after the judicial functions of the alcalde had been taken away.

"(d) Because the presumed judgment was of a foreign jurisdiction without any revival in the courts of the Republic.

"(e) Because execution issued in defiance of a judicial determination against the right to execution.

"(f) Because the execution was void for want of designation of the parties.

"(g) Because the void sale in 1839 added nothing to the void judgment in authorizing execution. In fact, all the original nullity remained, and the 1839 sale and bond were further void, because the sale was made after return day, and not on a day permitted or required by law.

"(h) Because no land was levied on or sold, because none was described in the execution or deed.

"(i) Because same constituted an attempted sale of a homestead, and was contrary to the statute, and therefore void."

The record discloses that on March 24, 1834, a judgment in favor of Zeno Phillips against George Tennille was rendered by Edwin Waller, alcalde for the county of Brazoria, for the sum of $204, with interest from May 21, 1833. The evidence shows that Edwin Waller was alcalde for Brazoria county at the time this judgment was rendered, and that the records of his office have been lost or destroyed. Geore Tennille brought suit to the September term, 1837, of district court of Brazoria county to enjoin an execution issued on the judgment, on the grounds that he did not authorize the attorney who

appeared for him and confessed judgment to make such confession or appearance, and that he had no notice of the suit against him. This petition for injunction also alleges that the petitioner was not indebted to Zeno Phillips in any amount, and further alleges:

"Your orator further avers that Zeno Phillips is dead, and, if the judgment was legally obtained, the execution could not issue in his name, but must be in that of his administrator, and therefore the execution is void, being in the name of said decedent. And your orator would further represent unto your honor that the purported judgment was obtained before Edwin Waller, Esq., alcalde in and for the county of Brazoria aforesaid under the Mexican government. Now, if the judgment aforesaid was well obtained under said government, still it could not be enforced against your orator according to the laws of the Republic by forthwith issuing an execution against your orator, but notice must be given your orator of said judgment to appear at a certain time and place and show cause why the judgment should not be revived against him in the district court or the county court, and, if no good cause was shown, then, and not till then, could a judgment be rendered and an execution issue against your orator for the claim aforesaid. Your orator prays that in tender consideration of facts set forth in the premises that you grant him your writ of injunction to the coroner of said county or other person commanding the sheriff of said county not to collect the amounts of said execution, and that a notice may issue from the district court of said county to the proper representatives of said Zeno Phillips when your orator discovers who they are, and that they may be made party to this proceeding, and that they appear at the next term of said district court then and there to answer the facts set forth in this petition. And your orator, as in duty bound, will ever pray," etc.

A temporary injunction was issued on this petition and citation ordered as prayed for.

At the March term, 1838, of the district court, the following answer was filed in this injunction suit:

"The Republic of Texas, County of Brazoria.

"District Court March term, 1838.

"Geo. Tennell v. Heirs of Zeno Phillips.

"Injunction.

"Defendant in this case by his attorneys moves that the injunction be dissolved for the following reasons: First, that the facts stated in plaintiff's petition are untrue; second, that, if true, they would not warrant the granting of an injunction, inasmuch as they might have been pleaded before judgment, and it appears from the record that the defendant in the original suit by his attorney confessed judgment.

"Wherefore defendant prays that the injunction in this case be dissolved, and that execution issue against the plaintiff for the amount of the original judgment, with interest and 10 per cent. damages and costs.

"Townsend & Pease, for Defendant."

At the April term, 1838, a judgment was rendered in the case dissolving the injunction at the cost of Tennille; the only judgment

entry in the case found in the court records being in these words: "Injunction dissolved at the cost of Tennell."

It appears that an execution was issued by the district clerk on this judgment in favor of the "heirs of Zeno Phillips," and land of the defendant George Tennille was levied upon and sold by the sheriff to the defendant George Tennille and "his son" on a credit of twelve months. Under the law then in force, George Tennille executed a bond for the payment of the amount due on the judgment, with Thomas K. Davis as his surety. The subsequent executions under which the land in controversy was sold to the deceased were issued on this bond.

Prior to the issuance of this execution, Ammon Underwood had purchased the judgment from the administrator of the Zeno Phillips estate and all subsequent executions issued thereon were for his benefit.

In April, 1842, an execution was issued against George Tennille and Thomas K. Davis, and thereunder 1,000 acres of the land involved in this suit was levied upon and sold by the sheriff of Brazoria county on the first Tuesday in June, 1842. Ammon Underwood was the purchaser at this sale, and the land was deeded to him by the sheriff. The land levied upon and sold is described in the sheriff's deed as "1,000 acres of land off the lower corner of the George Tennille league of land above and near the town of Columbia, and known as part of the headright of George Tennille."

The proceeds of this sale being insufficient to satisfy the judgment and cost in the case, another execution was issued by the clerk of the district court of Brazoria county on November 10, 1846, for the balance due on the judgment. Under this execution an additional 1,000 acres of the land in controversy was levied upon and sold by the sheriff of Brazoria county on January 15, 1847. Underwood was the purchaser at this sale, and received a deed from the sheriff.

The proceeds of this sale being also insufficient to satisfy the judgment, a second levy and sale was made under the second execution. At this sale, on the 2d day of March, 1847, Underwood purchased 250 acres of the land, which was thereafter deeded to him by the sheriff.

George C. Tennille died in Gonzales county in 1874, leaving a will by which he devised all of his lands to his son, Tom C. Tennille. In 1903 Tom C. Tennille brought suit in the district court of Brazoria county against some of the defendants in this suit and the vendors of the remaining defendants to recover the land here in controversy. A settlement was had in that suit, by the terms of which the defendants acquired title to all of the land, except 100 acres, which they conveyed by deed to Tom C. Tennille, and which is not in controversy here.

The will of George C. Tennille was filed for probate by his widow, Amanda Tennille, in the office of the district clerk of Gonzales county on August 1, 1874. Proof of the will in proper form and sworn to by John S. Reynolds, one of its subscribing witnesses, was filed with the will, and had the following indorsement thereon:

"Testimony of John S. Reynolds. Probate of the will of George C. Tennell, entered F, p. 553."

August 31, Amanda Tennille, by her attorney, Joseph O'Connor, filed a petition in the district court of Gonzales county asking to be appointed temporary administratrix "with the will of George C. Tennille annexed."

In Book F of the probate minutes of the county the following entry is found:

"In vacation Sptr. 2nd, 1874. Probate of the will of George C. Tennille, deceased.

"Amanda J. Tennille having filed in the office of the district court of Gonzales county her petition for the probate of the will of George C. Tennille, deceased, praying that the same be probated after notice and citation as by law required. And notice and citation having been issued as by law required and no objection. Personally appeared before the clerk of the district court in vacation John S. Reynolds, one of the subscribing witnesses to said will, and subscribed the following affidavit."

Following this entry, the affidavit of Reynolds is entered in the minutes, which also contain a copy of the will.

We are relieved of a detailed discussion of the nine grounds, above set out, upon which plaintiffs claim that the execution sales under which Underwood purchased the land in controversy were void, not only by the manner in which the questions are presented in appellants' brief, but because each and all of these questions were considered and decided adversely to appellants in an opinion of this court in the case of Clements v. Texas Co. et al., 273 S. W. 993. The plaintiffs in that case are the plaintiffs in this suit, and some of the defendants in this suit were defendants in the Clements Case. The land involved in that case was a part of the first 1,000 acres of land purchased by Underwood under the execution sale attacked in this suit.

Every question affecting the validity of the execution sales sought to be presented in this suit was raised, considered, and passed upon by this court in the Clements Case.

It is very earnestly insisted by counsel for appellees that the doctrine of stare decisis and judicial estoppel preclude appellants from raising in this suit questions which were finally determined against them in the Clements Case. In support of this contention, appellees cite, with others, the cases of Benavides v. Garcia (Tex. Com. App.) 290 S. W. 740, and Hanrick v. Gurley, 93 Tex. 458, 54 S. W. 347, 55 S. W. 119, 56 S. W. 330. The doctrine of stare decisis which was discussed

and applied in the Benavides Case is thus stated in the opinion of the Court of Civil Appeals for the Fourth District, 283 S. W. 613:

"When in one case the highest court of the state has determined a specific issue, or given a particular effect to a specific instrument in writing or state of facts, such determination is conclusive upon the identical matters in subsequent litigation involving such matters, even though it is presented by different parties and concerns different properties. 21 C. J. 1063; Black Judg. §§ 607, 609; Freeman Judg. §§ 672, 822, 855, 857, 858; Hanrick v. Gurley, 93 Tex. 458, 54 S. W. 347, 55 S. W. 119, 56 S. W. 330; O'Rourke v. Clopper, 22 Tex. Civ. App. 377, 54 S. W. 930; Hennegan v. Nona Mills Co., (Tex. Civ. App.) 195 S. W. 664. So the holding of this court in the former suit, approved by the Supreme Court in the denial of writ of error, that under the will here in controversy Francisco and Juan Benavides were each vested with an undivided one-half interest in the lot there in controversy, is determinative in this case in so far as it affects the interest of [Lazaro] here in controversy, since [his] interest in that tract is identical with his interest in the tract here involved. The court * * * did not err in admitting in evidence the proceedings in the former suit."

[2] When the case reached the Supreme Court, the holding of the Court of Appeals was affirmed in an opinion by Justice Speer of the Commission of Appeals (290 S. W. 740). In both of these opinions the application of the rule stare decisis is based upon the holding that the Supreme Court, in refusing the writ of error in the former case, necessarily passed upon the exact questions presented in the second suit. This cannot be said of the judgment of the Supreme Court refusing a writ of error in the Clements Case. Under the law in force at the time this writ of error was refused, the refusal of the writ of error was not in itself an approval of the holdings of this court upon all of the questions presented by the appeal, and, since the judgment of this court in that case was also based on a finding of limitation in favor of the defendants, a decision of the other questions was not necessarily involved in the refusal of the writ.

In the Benavides Case both the Court of Appeals and the Commission of Appeals state in their opinions that the question held to be stare decisis was necessarily decided by the Supreme Court in refusing the writ of error. Under our present statute, Acts of Fortieth Legislature, c. 144, p. 215, the refusal by the Supreme Court of a writ of error is given the effect of an approval by that court of all the principles of law as declared and determined in the opinion of the Court of Civil Appeals, and, if this statute had been in effect at the time the writ of error was refused in the Clements Case, we would hold that the rule of stare decisis should be applied against appellants in this case.

[3] For the reason above indicated, the doc-

trine of judicial estoppel which was applied in the Hanrick v. Gurley, supra, is not applicable in this case. In the case cited, the question which the plaintiff was held estopped to raise in the second suit was decided against him in the first suit by the district court, and no appeal was taken from that decision. Having acquiesced in the decision, the plaintiff was estopped from raising the same question in a second suit between the same parties or their privies.

While we do not think the authorities cited by appellees sustain the contention that appellants cannot be heard to raise the questions in this suit which were decided against them in the opinion of this court in the Clements Case, we adhere to all of the material conclusions expressed in that opinion, and overrule all of appellants' objections to the execution sales from which appellees' title emanates.

The opinion of this court in the Clements Case, written by Special Chief Justice Sears, is clear and exhaustive, and we deem it unnecessary to add anything to what is there said in disposing of these objections.

We also adhere to the conclusions expressed in that opinion upon the validity of the probate of the will of George C. Tennille.

As presented in appellants' brief no further discussion of the questions arising upon the record is required, if permissible.

It follows that the judgment should be affirmed, and it is so ordered.

Affirmed.

### On Motion for Rehearing.

We cannot agree with the statement in appellants' motion for rehearing that the evidence adduced on the trial of this case on the issues determined by this court in the case of Clements v. Texas Co., 273 S. W. 933, is materially different from the evidence in the Clements Case. The evidence is practically identical in the two cases.

The contention that there is evidence in this case which shows that, at the time of the execution sale of 1,000 acres in the southeast corner of the Tennille grant, George Tennille had a homestead of 200 acres in that corner of the grant, and that other portions of that corner of the grant were not owned by George Tennille, is not supported by the record.

There is no evidence in the record from which it can be reasonably inferred that Tennille had a homestead in that portion of the grant at the time of the levy and sale under execution. On the contrary, the evidence negatives such conclusion. The only evidence tending to show that any portion of the 1,000 acres in form of a square in the southeast corner of the grant was not owned by Tennille at the time of the levy are statements or admissions made by Underwood

some years after his purchase, in a suit involving the location of the division line between his land and land owned by Tennille in the southeastern portion of the grant. These admissions are too indefinite to justify the conclusion sought to be drawn by appellant.

[4] If it be conceded, however, that the evidence is such as to require a finding that 1,000 acres of land taken in a square in the southeast corner of the grant, at the time of the levy, would have included Tennille's homestead and some land not owned by him, we are not prepared to hold that such facts would render the levy and sale void. Under such circumstances, no title would have passed by the execution sale and the sheriff's deed to the Tennille homestead nor to land not owned by him, but as to the remainder of the 1,000 acres we think the sale should be held valid. Smith v. Crosby, 86 Tex. 15, 23 S. W. 10, 40 Am. St. Rep. 818; Ryan v. Engleson, 26 Tex. Civ. App. 192, 62 S. W. 1072; Boyce v. Hornberger, 29 Tex. Civ. App. 337, 68 S. W. 701.

The motion for rehearing repeats and reurges all of the numerous assignments contained in appellants' brief, and, in addition, complains of many other errors committed by this court.

The record speaks for itself, and we deem it unnecessary to discuss other questions presented in the motion.

We adhere to the conclusion expressed in our main opinion, and the motion has been refused.

Refused.